UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                          Case No. 3:25-cr-180

          Plaintiff,

     v.                                               MEMORANDUM OPINION
                                                    AND ORDER

Robert Carl Stolzenberg,

          Defendant.

## I.     INTRODUCTION

Defendant Robert Carl Stolzenberg seeks to suppress all statements he made to law enforcement following a search of his residence. (Doc. No. 15). The government filed a brief in opposition to the motion. (Doc. No. 16). Stolzenberg did not file a brief in reply. For the reasons stated below, I deny Stolzenberg's motion.

## II.     BACKGROUND

In 2024, Stolzenberg came under investigation for possible receipt of child pornography. (Doc. No. 16-1 at 13-16). In August and November of that year, the National Center for Missing and Exploited Children ("NCMEC") received tips flagging apparent images of child pornography associated with an internet protocol ("IP") address which investigators subsequently determined was assigned to Stolzenberg's Plainfield Drive residence in Lima, Ohio. (*Id.*). Following another tip to NCMEC in February 2025, investigators obtained a search warrant for Stolzenberg's residence. (*Id.* at 16-17).

Agents executed the search warrant on April 1, 2025.  Federal Bureau of Investigation Special Agent Caleb Williams briefly spoke with Stolzenberg outside of the residence before moving to Williams' vehicle.  During the discussion inside Williams' vehicle, Stolzenberg admitted to viewing child pornography and acknowledged investigators would find child pornography on his cell phone.  Stolzenberg also agreed to take a polygraph examination.  After taking the polygraph and signing a written statement admitting he had requested and received electronic images of child pornography, as well as taking a photograph of a naked minor, Stolzenberg was placed under arrest.  (*See* Doc. No. 16-5 at 2-3).  He subsequently was charged by indictment with one count of receipt and distribution of child pornography.  (Doc. No. 10).

### III.     ANALYSIS

Stolzenberg moves to suppress the statements he made following the execution of the search warrant.  He contends "he was induced to sit and talk to [Williams'] by the promise that he would return home," because he wanted to avoid being arrested.  (Doc. No. 15 at 3).  According to Stolzenberg, he "interpreted" Williams' alleged statement that Stolzenberg could return home after talking to Williams "as a promise that he would not be arrested if he admitted to whatever the agent was investigating." (*Id.*).  Stolzenberg argues that Williams' failure to provide him with his *Miranda* warnings prior to the initial conversation in Williams' vehicle violated Stolzenberg's Fifth Amendment privilege against self-incrimination.

The Fifth Amendment prohibits the government from using "statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*  "Two discrete inquiries are essential

2

to [determining whether an individual was subjected to custodial interrogation]: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (footnote omitted).

As I noted above, Williams questioned Stolzenberg while they were seated inside Williams' vehicle parked outside of Stolzenberg's residence, with the initial part of this encounter centering around Stolzenberg's dog, which had recently had puppies. (Doc. No. 17 at 5:16-6:11). The Sixth Circuit has held that an interview held inside of an investigator's vehicle parked in a public location is not coercive or intimidating in the nature of an interrogation held in a police station. *United States v. Salvo*, 133 F.3d 943, 950-51 (6th Cir. 1998). Further, this discussion lasted approximately one hour, "a length of time that compares favorably with other encounters . . . [the Sixth Circuit has] deemed non-custodial." *United States v. Panak*, 552 F.3d 462, 467 (6th Cir. 2009) (citations omitted).

Stolzenberg was not handcuffed before or during Williams's questioning and, as he admits, Williams told him, "more than once, that he was *free to leave*." (Doc. No. 15 at 3) (emphasis in original); (*see also* Doc. No. 17 at 7:31-7:53) (telling Stolzenberg the interview was "100% voluntary," that he did not "have to talk to" investigators, and that he was "free to leave"). Multiple federal courts have concluded "such a statement by a police officer is an important factor in finding that the suspect was not in custody." *Salvo*, 133 F.3d at 951 (citing cases).

The circumstances confirming the non-custodial nature of the questioning go beyond these statements. The tone of Williams' questioning was conversational rather than aggressive, and the interview took place right outside of Stolzenberg's residence. While Stolzenberg was not able to go back inside while investigators executed the search warrant, Williams told Stolzenberg he would make sure Stolzenberg could get what he needed to go to work later that morning. And, later in the interview, Williams asked Stolzenberg if he needed a break to use the bathroom and, after

3

Stolzenberg admitted officers would find child pornography on his cell phone, Williams allowed Stolzenberg to exit the vehicle and go inside the house. (*See* Doc. No. 17 at 32:59-33:06 and 50:08-51:15).

Stolzenberg alleges Williams promised that he could "return home" if he spoke with Williams, and that he interpreted this alleged promise "as a promise that he would not be arrested if he admitted to whatever the agent was investigating." (Doc. No. 15 at 2). If Stolzenberg's view, this alleged promise "induced[ him], with the promise of freedom, to make self-incriminating statements." (*Id.* at 3). But "[t]he question in the end is not whether the individual felt pressure to *speak* to the officers but whether [he] was forced to *stay* with them." *Panak*, 552 F.3d at 471 (emphasis in original). Stolzenberg has not made this required showing.

I conclude that, in the circumstances of this case, a reasonable person would have believed he or she could terminate the interrogation and leave the encounter. *See, e.g., United States v. Sivils*, 960 F.2d 587, 598 (6th Cir. 1992) (holding defendant was not subjected to a custodial interrogation because, among other reasons, defendant was able to move around without restriction and "was freely permitted to use the restroom"); *Panak*, 552 F.3d at 467 (concluding defendant was not in custody because, in part, officers did not "limit her freedom of movement").

Stolzenberg also argues his statements to Williams should be suppressed because Williams allegedly "delayed arresting [him] in order to avoid [giving] *Miranda* [warnings.]" (Doc. No. 15 at 4). But Stolzenberg has not offered any evidence to support this assertion. And, more importantly, formal arrest is not the touchstone for invocation of the constitutional protections discussed in *Miranda* – custody is, and I already have concluded Stolzenberg was not in custody when Williams questioned him while parked outside of Stolzenberg's residence. Stolzenberg fails to show his Fifth Amendment rights were violated.

4

## IV. CONCLUSION

For the reasons set forth above, I deny Defendant Robert Carl Stolzenberg's motion to suppress. (Doc. No. 15).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
